UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALAN J. RUSHING, Ph.D.,

        Plaintiff,

vs.                                                DECISION AND ORDER
                                                       05-CV-6243 CJS

NEXPRESS SOLUTIONS, INC.

        Defendant.
_____


**APPEARANCES**

For Plaintiff:                            Randolph C. Oppenheimer, Esq.
                                              Kavinoky Cook LLP
                                              726 Exchange Street, Suite 800
                                              Buffalo, NY 14210
                                              (716) 845-6000

For Defendant:                          David J. Edwards, Esq.
                                              Laura W. Smally, Esq.
                                              Paul J. Yesawich, III, Esq.
                                              Neal L. Slifkin, Esq.
                                              Harris Beach LLP
                                              99 Garnsey Road
                                              Pittsford, NY 14534
                                              (585) 419-8800

      **Siragusa, J.** Before the Court is plaintiff's motion (Docket No. 17) for judgment on

the pleadings pursuant to Federal Rule of Civil Procedure 12(c), in which he seeks

dismissal of defendant's nine counterclaims. Also before this Court is defendant's application (Docket No. 30) to strike a portion of plaintiff's reply memorandum of law along with plaintiff's reply affidavit and attachments. For the reasons stated below, defendant's motion to strike is granted in part, and plaintiff's motion to dismiss defendant's second through eighth counterclaims is denied, except as to defendant's fifth counterclaim.

## BACKGROUND

In 2002, defendant's predecessor, Heidelberg Digital L.L.C. ("HDI"), commenced an action against plaintiff in this Court under Civil Action No. 02-CV-633L(F) (the "2002 Federal Action"). On June 6, 2003 HDI voluntarily dismissed the 2002 Federal action without prejudice by filing a notice of dismissal pursuant to Rule 41(a)(1)(i). (Reply ¶¶ 59-60.) On the same day, HDI commenced an action against plaintiff in New York State Supreme Court, Seventh Judicial District, Monroe County (the "State Action"). In the complaint in the State Action, HDI alleged claims under a 1973 Eastman Kodak Company ("Kodak") Employment Agreement between plaintiff and Kodak, and claims under a 1999 employment agreement between plaintiff and HDI. (Reply ¶¶ 61-63.). HDI alleged that plaintiff was obligated to assign his rights under the '832 patent and the '972 patent (referred to in Defendant's Ninth Counterclaim in this action) to HDI. (Reply ¶ 65.) On May 19, 2004, counsel for all parties in the State Action signed a stipulation discontinuing the action with prejudice, and the stipulation was filed with the Monroe County Clerk on May 25, 2004. (Reply ¶ 66.)

Plaintiff also alleges in his reply that the 2002 Federal Action contained a claim identical to defendant's sixth counterclaim here: breach of the HDI contract's non-

disclosure provision. When that Federal suit was dismissed and HDI filed the State Action, that claim, referred to by the parties as the "trek episode," was purposely omitted. (Reply ¶¶ 69-70.) Plaintiff alleges that then counsel for HDI sent a June 6, 2003, letter explaining why the trek episode claim was omitted:

> Notwithstanding the fact that our recent efforts to resolve this matter informally were unsuccessful, in hopes that such a disposition may still be possible, please note that I have deleted from the complaint any references to the "trek" episode, allegations in the Federal Court complaint which Dr. Rushing took particular exception to.

(Reply ¶ 70.) On August 27, 2003, New York State Justice Thomas A. Stander issued a decision, a transcript of which is incorporated into plaintiff's Reply, granting plaintiff partial summary judgment by dismissing all causes of action asserted against him under the 1973 Kodak Employment Agreement, based on the integration clause in the HDI Employment Agreement. (Reply ¶ 75.) HDI and plaintiff then entered into a Settlement Agreement, a copy of which is incorporated into defendant's amended answer. (Amended Answer ¶ 103.) In that document, plaintiff and HDI agreed that plaintiff "Rushing's Patent Rights" meant "U.S. Patent No. 6, 229,972, U.S. Patent No. 6,331,832, and U.S. Patent No. 6,567,171." (Settlement Agreement ¶ 1.1.) They also agreed that "HDI's Patent Rights" meant, "U.S. Patent No. 6,385, 411 and U.S. Patent No. 6,427,057." (Settlement Agreement ¶ 1.2.) In the section of the Settlement Agreement entitled, "Grant of Rights," the plaintiff and HDI agreed as follows:

> 2.3   This Settlement Agreement, Assignment and License Agreement ("[sic] collectively referred to as "Agreements") confer no assignment, license, or rights to HDI by implication, estoppel, or otherwise under any patent applications or patents of Rushing other than Rushing's Patent Rights. Specifically, HDI has no rights, ownership or other

       interests in Rushing: U.S. Application No. 09/873465 (now U.S.
       Patent No. 6,671,052) and U.S. Patent Application No. 10/095166.

(Settlement Agreement ¶ 2.3.)

In this lawsuit, defendant makes the following counterclaims, on which plaintiff is seeking to obtain judgment[1] by this Rule 12(c) motion:

Second counterclaim: defendant's claim that plaintiff breached the HDI Employment Agreement;

Third counterclaim: defendant's claim that plaintiff breached his common law duties to defendant by failing and refusing to assign the invention to NexPress;

Fourth counterclaim: defendant's claim that it is entitled to declaratory judgment that plaintiff is the rightful owner of the patent-in-suit (No. '052);

Fifth counterclaim: as an alternative to the Fourth counterclaim, defendant's claim that if it is not the rightful owner of the patent-in-suit, that it is entitled to a final adjudication declaring that plaintiff is not the rightful owner of the patent-in-suit by virtue of the Kodak Agreement and/or by Rushing's common law duties as an employee hired to invent, and a judgment further establishing and declaring the relative rights and responsibilities of the parties;

Sixth counterclaim: defendant's claim that plaintiff breached the HDI non-disclosure agreement;

---

[1] Plaintiff does not seek judgment on the first counterclaim (seeking a declaratory judgment that defendant has not infringed the patent-in-suit), and the ninth counterclaim (seeking a declaratory judgment that defendant has not breached the 2003 State Court Action settlement agreement and is, therefore, entitled to its enforcement against plaintiff).

Seventh counterclaim: defendant's claim of unfair competition on plaintiff's part;

Eighth counterclaim: defendant's claim that plaintiff breached his fiduciary duty to defendant as a result of his former employment with HDI.

In his motion to dismiss defendant's fifth counterclaim, plaintiff contends that the Settlement Agreement precludes that counterclaim. With regard to his motion to dismiss defendant's second through eighth counterclaims, plaintiff contends that they are precluded by application of *res judicata* based on Justice Stander's State court judgment.

As indicated above, defendant has also moved to strike all of plaintiff's reply affidavit and most of his reply memorandum of law. Defendant argues that the reply affidavit and reply memorandum rely on information outside the pleadings and are otherwise improper.

## STANDARDS OF LAW

As a procedural matter, on a motion to dismiss under Rule 12, the Court is limited to reviewing the pleadings, documents attached thereto and incorporated into the pleadings, and matters of which the Court may take judicial notice. 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.). However, plaintiff has submitted an affidavit not a part of the pleadings, presumably with the intent that the Court rely on it to decide plaintiff's motion to dismiss some of defendant's counterclaims. When the parties do this in conjunction with a motion under Rule 12(c), the Court must either choose to exclude the additional materials, or convert the motion into one for summary judgment and consider the extraneous papers. *See* Fed. R. Civ. P. 12(c).

In considering plaintiff's motion to dismiss certain counterclaims under Rule 12, plaintiff must show that defendant can prove no set of facts in support of its claim that

would entitle it to relief. See *H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 249 (1989); *see also* 2 Moore's Federal Practice, § 12.34[1][a] (Matthew Bender 3d ed.). The Court must view the counterclaims, and draw all reasonable inferences, in the light most favorable to the non-moving party. *Id.*; *see also* 2 Moore's Federal Practice, § 12.34[1][b] (Matthew Bender 3d ed.) (court must accept plaintiff's factual allegations as true).

## ANALYSIS

As previously stated, the Court has discretion to convert the Rule 12(c) motion into a summary judgment motion under Rule 56 in order to consider the matters plaintiff has submitted outside the pleadings in support of his motion. In that regard, plaintiff argues, in opposition to defendant's motion to strike, that his affidavit should be considered, citing as authority for his position *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) in support of his argument. There the Second Circuit stated:

> In addition, we have held that when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure. Similarly, when a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC, particularly where plaintiff has been put on notice by defendant's proffer of these public documents.
>
> A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since, as noted earlier, the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily

> converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

*Cortec Industries, Inc.*, 949 F.2d at 48. The extraneous matter submitted here consists of Dr. Rushing's affidavit signed on March 15, 2006, and its attachments dated in 2003. Plaintiff is the moving party and he has chosen to proceed under Rule 12(c); therefore, the Court declines to convert plaintiff's motion to a motion for summary judgment, and will not consider plaintiff's affidavit or the portions of his memoranda of law that rely on matters outside the pleadings. Although the attachments to Dr. Rushing's affidavit, consisting of an email dated May 29, 2003, and a confidential letter dated October 17, 2003, were in existence at the time defendants filed their answer, they came from the office of Wolford and LeClair. Plaintiff has not shown that defendant's current attorneys, from the firm of Harris Beach, were aware of the email and confidential letter, or relied on them to form their counterclaims.

Turning to plaintiff's motion for judgment on defendant's fifth counterclaim, he contends that the plain and unambiguous meaning of the Settlement Agreement language, quoted above, conclusively establishes that defendant has no interest in Patent No. 6,671,052 ("'052"). However, plaintiff apparently believes the language is not all that clear, since he also sought to supplement it with parole evidence showing that HDI has no interest in the '052 Patent. The Court finds that, in the context in which it is presented, the language in Settlement Agreement paragraph 2.3 does not clearly establish that HDI relinquished any rights to '052, but, instead, shows only that the Settlement Agreement

itself did not purport to create any right in HDI to '052. Therefore, plaintiff's motion to dismiss the fifth counterclaim on this basis is denied. Plaintiff has failed to show that defendant will be unable to prove any set of facts in support of its claim that would entitle it to relief.

To properly address plaintiff's motion to dismiss the second through eighth counterclaims on the basis of *res judicata*, the Court must determine "what preclusive effect a New York state court would give" to the prior proceeding. *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994).

> New York adheres to a transactional analysis of *res judicata*, "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Smith v. Russell Sage College*, 54 N.Y.2d 185.

*Burka*, 32 F.3d at 657. In his August 2003 decision, Justice Stander decided the issue of whether Kodak's Employment Agreement still applied to plaintiff. The parties in that state lawsuit were HDI and plaintiff. Justice Stander found that,

> the integration clause in the Heidelberg[2] Employment Agreement acts to supercede the Kodak Employment Agreement. Although the Asset Purchase Agreement has not been submitted to the Court, it is not disputed by either party that when Plaintiff [HDI] purchased Kodak's assets in the Imaging Unit relating to black and white electrophotographic products and services, Plaintiff assumed or was assigned the rights under the Kodak Employment Agreement. Therefore, following that assignment or assumption, Plaintiff replaced Kodak in the Kodak Employment Agreement. As Plaintiff was standing in the shoes of Kodak at the time of the execution of the Heidelberg Employment Agreement, the Kodak Employment Agreement was an agreement "with Heidelberg" that was replaced by the Heidelberg

---

[2]Although this Court has adopted the parties' abbreviation HDI for Heidelberg Digital L.L.C., in his decision, Justice Stander referred to that company simply as "Heidelberg."

>Employment Agreement. The Heidelberg Employment Agreement was a novation.

Court's Decision, *Heidelberg Digital, LLC v. Rushing*, No. 2003/06760 (N.Y. Sup. Ct., Monroe Cty., Aug. 27, 2003), slip. opn. at 4 (Oppenheimer Aff. Ex. H). In opposing plaintiff's motion for judgment on the basis of *res judicata*, defendant argues that Kodak's interests were not represented in the state lawsuit. Defendant contends now that defendant NexPress Solutions, Inc., HDI's successor, is owned by Kodak, that it represents Kodak's interests in this lawsuit and that it is entitled to litigate Kodak's rights under the Kodak Employment Agreement. (Def.'s Mem. of Law in Opposition to Pl.'s Motion to Dismiss Counterclaims, Docket No. 24, at 3.)

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). As defendant points out, in order for *res judicata* to apply, plaintiff must show that "1) the previous action involved an adjudication on the merits; 2) the previous action involved the [the same parties] or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000); (Def.'s Mem. of Law, Docket No. 24, at 7). Justice Stander found that HDI owned the rights that Kodak had in its Employment Agreement with plaintiff. Consequently, HDI stood in Kodak's shoes in the State Action and, as its successor, defendant is bound by Justice Stander's decision. Thus, contrary to defendant's argument, the Court finds that Justice Stander did determine that the Kodak Employment Agreement

was superseded by the HDI Employment Agreement and, therefore, plaintiff is entitled, on this basis, to judgment on defendant's fifth counterclaim, asserting Kodak's rights under the Kodak Employment Agreement.

As to defendant's second counterclaim, alleging plaintiff's breach of the HDI Employment Agreement, third counterclaim, alleging breach of plaintiff's common law duties to defendant by failing and refusing to assign "the invention"[3] to NexPress, seventh counterclaim, alleging unfair competition, and eighth counterclaim, alleging plaintiff's breach of his fiduciary duty to defendant as a result of his former employment with HDI, defendant argues that they have "as their common factual basis ownership of the '052 Patent." (Def.'s Mem. of Law, Docket No. 24, at 8.) The State Action complaint contains the following factual allegations:

> 32. On or about January 15, 2002, Rushing sent to Heidelberg a mailing which included an offer to sell or license to Heidelberg digital densitometer technology. The mailing also enclosed copies of two U.S. Patents Rushing had secured for densitometers he claims to have invented.
>
> 33. The densitometers disclosed in the two patents, Patent No. 6,331,832 (hereinafter "the '832 Patent") and Patent No. 6,229,972 (hereinafter "the '972 Patent") were made or conceived by Rushing, and are within, or arise out of, a field of employment in which Rushing worked while at Kodak and Heidelberg.

(Complaint, *Heidelberg Digital L.L.C. v. Rushing*, No. 2003/06760 (N.Y. Sup. Ct., Monroe Cty., Jan 6, 2003) ¶¶ 32-33 (Oppenheimer Aff., Docket No. 19, Ex. G). Plaintiff contends that HDI's State Action complaint's first and third causes of action in the 2003 State Action

---

[3] These are the actual words from the counterclaim. Presumably, they refer to the patent-in-suit here, No. '052.

lawsuit are identical to defendant's second and seventh counterclaim here, and that defendant's third and eighth counterclaims are based on the same factual underpinning as the claims asserted in the previous State Action. (Pl.'s Mem. of Law, Docket No. 18, at 12.) Plaintiff further argues that defendant is not only precluded from asserting the same claims as were contained in the State Action, but also "all relevant issues which could have been but were not raised and litigated in the suit." (*Id*.) Defendant counters that the '052 patent was not litigated in the State Action, and that, since the U.S. Patent Office did not issue that patent until December 30, 2003, it could not have been "a patent in dispute in the underlying [State] litigation." (Def.'s Mem. of Law, Docket No. 24, at 13; Compl. Ex. 2.) Thus, the essential issue is whether the State Action involved, or could have involved, U.S. Patent No. '052. In this regard, the Second Circuit has stated, "[w]hether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983); *see also Matter of Hunter*, 4 N.Y.3d 260, 269 (2005) (claims arising out of the same transaction or series of transactions are barred). Defendant's counterclaims in the present lawsuit stem from Patent '052, and were not litigated in the State Action. Therefore, the Court determines that plaintiff has not met his burden for judgment under Rule 12(c) with respect to the second, third, seventh and eighth counterclaims, all of which depend on the ownership rights of patent '052.

With regard to the fourth counterclaim, seeking a declaratory judgment that defendant is the rightful owner of Patent '052, this issue is also not precluded by the State Action. Further, the Court finds that this counterclaim also relies on an issue not litigated in the State Action. Consequently, plaintiff is not entitled to judgment on the fourth counterclaim.

Finally, defendant's sixth counterclaim alleges plaintiff's breach of the HDI non-disclosure agreement. Although the legal basis for this claim is the same as the first cause of action in the State Action, the underlying facts differ. In the State Action, plaintiff was alleged to have breached the HDI Employment Agreement with respect to his research and development work while an employee of HDI, particularly with respect to his solution for a digital densitometer design. (Complaint, *Heidelberg Digital L.L.C. v. Rushing*, No. 2003/06760 (N.Y. Sup. Ct., Monroe Cty., Jan 6, 2003) ¶ 25 (Oppenheimer Aff., Docket No. 19, Ex. G). In this case, the sixth counterclaim alleges:

> During his employment with Heidelberg, Rushing breached the [Heidelberg non-disclosure] Agreement by, among other things, disclosing to TREK, Inc. Heidelberg's trade secrets, proprietary and confidential information (*e.g.*, denistometer design drawings and specifications) and/or competing with Heidelberg using such information.

(Am. Ans. ¶93.)  Relying on *Austin v. Ford Models Inc.*, 149 F.3d 148, 155 (2d Cir. 1988) and *King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987), plaintiff argues that HDI abandoned this claim when it filed the State Action subsequent to its voluntary dismissal of the federal case, and chose to not include the "trek episode." (Pl.'s Mem. of Law, Docket No. 18, at 18.) In *Austin*, the Second Circuit said, "[u]ltimately, the question of abandonment is one of intent; ordinarily it makes perfect sense to hold that a party who seeks to file an

amended pleading that omits a claim intends to abandon the claim, irrespective of whether the amended pleading is permitted by the court." *Austin*, 149 F.3d at 155. However, the circuit court held that it did not need to decide whether the *pro se* plaintiff's claims had been abandoned there, since,

> in her reply brief Austin concedes that she "opted to sacrifice" (*i.e.*, abandon) her libel and slander claims and apparently her "thwarting" claim by omitting them from her proposed second amended complaint. Austin has not asserted any of these claims in her main brief on appeal; nor has she appealed from the district court's dismissal of her action as against the individual defendants omitted from her proposed second amended complaint.

*Id*. at 156.

In *King*, the Ninth Circuit held that, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567. While the holding in *King* is clearly applicable in a situation involving an amended complaint filed in the same action as the original complaint, in the present case, involving two different jurisdictions, makes its application less clear. The Court is more persuaded by the Second Circuit case, which places the emphasis on the party's intent in not including a claim in a subsequent pleading. Since this case is still at the pleading stages, and the Court is without the benefit of detailed affidavits comparing the claims from the State Action with the sixth counterclaim, and since a reading of the two pleadings does not convince the Court that the subject of the sixth counterclaim was involved in the State Action, the Court finds that plaintiff has not met its burden of showing that defendant will be unable to prove any set of facts in support of its claim that would entitle it to relief. Accordingly, plaintiff's motion for judgment dismissing the sixth counterclaim is denied.

**CONCLUSION**

Defendant's motion (Docket No. 30) to strike Dr. Rushing's affidavit (Docket No. 28) and its exhibits, and to strike Point I(C) (pages 6-7) of plaintiff's reply memorandum (Docket No. 27) is granted, and plaintiff's motion (Docket No. 17) to dismiss defendant's second through eighth counterclaims is denied, except with respect to defendant's fifth counterclaim, which is dismissed.

IT IS SO ORDERED.

Dated:   September 14, 2006
         Rochester, New York

                    ENTER.


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Court