**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

ALAN J. RUSHING, Ph.D.,

Plaintiff,

vs.

DECISION AND ORDER
05-CV-6243 CJS

NEXPRESS SOLUTIONS, INC., and EASTMAN KODAK CO.,

Defendants.

---

**APPEARANCES**

For Plaintiff:

Randolph C. Oppenheimer, Esq.
Kavinoky Cook LLP
726 Exchange Street, Suite 800
Buffalo, NY 14210
(716) 845-6000

For Defendant:

David J. Edwards, Esq.
Laura W. Smally, Esq.
Paul J. Yesawich, III, Esq.
Neal L. Slifkin, Esq.
Harris Beach LLP
99 Garnsey Road
Pittsford, NY 14534
(585) 419-8800

**Siragusa, J.** Plaintiff was granted leave by U.S. Magistrate Judge Jonathan Feldman to file a second amended complaint, which he did on September 28, 2007. (Docket No. 69.) The latest complaint raises patent infringement, breach of contract and tort claims with regard to the settlement of a prior state lawsuit involving Plaintiff and one of the predecessors to Defendants in this case. Now before the Court is Defendants'

motion (Docket No. 71) to dismiss claims four through eight in Plaintiff's second amended complaint, as well as most of claim three. For the reasons stated below, the Court grants the motion.

**BACKGROUND**

In 2002, Defendants' predecessor, Heidelberg Digital L.L.C. ("HDI"), commenced an action against Plaintiff in this Court under Civil Action No. 02-CV-633L(F) (the "2002 Federal Action"). Decision and Order, *Rushing v. Nexpress Solutions, Inc.*, No. 05-CV-6243 CJS (W.D.N.Y. Sep. 14, 2006), at 2. On June 6, 2003, HDI voluntarily dismissed the 2002 Federal action without prejudice by filing a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(i). On the same day, HDI commenced an action against Plaintiff in New York State Supreme Court, Seventh Judicial District, Monroe County (the "State Action"). In the State Action complaint, HDI alleged claims under a 1973 Eastman Kodak Company ("Kodak") Employment Agreement between Plaintiff and Kodak, and claims under a 1999 employment agreement between Plaintiff and HDI. HDI alleged that Plaintiff was obligated to assign his rights under the '832 patent and the '972 patent to HDI. *Id*. On May 19, 2004, counsel for all parties in the State Action signed a stipulation discontinuing the action with prejudice, and the stipulation was filed with the Monroe County Clerk on May 25, 2004. In the section of the Settlement Agreement entitled, "Grant of Rights," Plaintiff and HDI agreed as follows:

> 2.3 This Settlement Agreement, Assignment and License Agreement ([]collectively referred to as "Agreements") confer no assignment, license, or rights to HDI by implication, estoppel, or otherwise under any patent applications or patents of Rushing other than Rushing's Patent Rights. Specifically, HDI has no rights, ownership or other

> interests in Rushing: U.S. Application No. 09/873465 (now U.S. Patent No. 6,671,052) and U.S. Patent Application No. 10/095166.

(Settlement Agreement ¶ 2.3.) In the second amended complaint, Plaintiff raises the following claims:

> CLAIM 1, ’052 PATENT INFRINGEMENT (Under 35 U.S.C. § 271 of the ’052 Patent);
>
> CLAIM 2, ’171 PATENT INFRINGEMENT (Under 35 U.S.C. § 271 of the ’171 Patent);
>
> CLAIM 3, BREACH OF SETTLEMENT AGREEMENT;
>
> CLAIM 4, FRAUDULENT INDUCEMENT;
>
> CLAIM 5, BREACH OF FIDUCIARY DUTY;
>
> CLAIM 6, CONVERSION;
>
> CLAIM 7, SLANDER OF TITLE; and
>
> CLAIM 8, ABUSE OF PROCESS.

(2d Am. Compl., Docket No. 69, at 30-38.) Plaintiff seeks compensatory and punitive damages, attorney’s fees, and equitable relief. As indicated previously, Defendants have moved to dismiss claims four through eight in their entirety, as well as most of claim three.

In its prior decision pertaining to Plaintiff’s motion to dismiss counterclaims raised by Defendants in response to the first amended complaint, the Court determined that

> in the context in which it is presented, the language in Settlement Agreement paragraph 2.3 does not clearly establish that HDI relinquished any rights to ’052, but, instead, shows only that the Settlement Agreement itself did not purport to create any right in HDI to ’052. Therefore, plaintiff’s motion to dismiss the fifth counterclaim on this basis is denied. Plaintiff has failed to show that defendant will be unable to prove any set of facts in support of its claim that would entitle it to relief.

*Rushing v. Nexpress Solutions, Inc.*, No. 05-CV-6243 CJS, 2006 U.S. Dist. LEXIS 65598, *10 (W.D.N.Y. Sep. 14, 2006).[1] In addition, the Court determined that ownership rights over the '052 patent were in dispute. *Id*. at 17.

**STANDARDS OF LAW**

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

---

[1]The Court also previously ruled that "Justice Stander did determine that the Kodak Employment Agreement was superseded by the HDI Employment Agreement." *Id*. at 14.

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

**ANALYSIS**

The Court will individually address each claim with regard to Defendants' motion to dismiss.

***Third Claim - Breach of Settlement Agreement***

Defendants contend that, with two minor exceptions,[2] Plaintiff cannot take what is essentially a patent infringement suit and turn it into a breach of contract action. Defendants argue that Plaintiff reads section 2.3 of the Settlement Agreement as confirming his ownership in the '052 patent and contends that by challenging that ownership, Defendants are breaching section 2.3 of the Settlement Agreement. However, in this regard, Defendants contend that "NexPress cannot breach the Settlement Agreement simply by advancing an interpretation of that Agreement with which [Plaintiff] disagrees." (Def.s' Mem. of Law, Docket No. 71-2, at 8.) Defendants also contend that even if the Settlement Agreement did confirm Plaintiff's ownership of '052, the Settlement

[2]Defendants do not seek at this juncture to dismiss Plaintiff's claims that they breached the settlement agreement with respect to any allegations of non-payment of patent maintenance fees.

Agreement contains no duty that they have breached. "Even if [Plaintiff] owns the patent, there is thus no duty, or undertaking of any kind, by defendants which can support a claim for breach of contract." (*Id.*)

Defendants point out that the Settlement Agreement contains no affirmative duty on their part, other than to pay maintenance fees on two patents. They argue that even if the Settlement Agreement confirmed that the patents mentioned were owned by Plaintiff,

> what is the duty or promise NexPress and/or Kodak are alleged to have breached? There is no covenant not to sue, no warranty of quiet title, and no promise by NexPress to do or refrain from doing anything whatsoever. Even if Rushing owns the patent, there is thus no duty, or undertaking of any kind, by defendants which can support a claim for breach of contract.

(Def.s' Mem. of Law at 8.) They also cite to Williston on Contracts to support their contention that, "[a]s a contract consists of a binding promise or set of promises, a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract. 23 Richard A. Lord, Williston on Contracts §63:1 (4th ed. 2002)."

In its prior decision with respect to Settlement Agreement ¶ 2.3, the Court stated:

> The Court finds that, in the context in which it is presented, the language in Settlement Agreement paragraph 2.3 does not clearly establish that HDI relinquished any rights to '052, but, instead, shows only that the Settlement Agreement itself did not purport to create any right in HDI to '052.

*Rushing v. Nexpress Solutions, Inc.*, No. 05-CV-6243, 2006 U.S. Dist. LEXIS 65598, *10 (Sept. 14, 2006). If Plaintiff is to succeed on his breach of settlement agreement claim, he must prove his ownership of '052. If successful, he has asked for the following damages:

> special damages, consisting of lost royalties for infringement of the '052 Patent by others, the cost (including attorneys' fees and their disbursements) he has incurred in investigating the defendants' acts and the fees and costs (including attorneys' fees and their disbursements) incurred in settling the State Action and in prosecuting this action… [and] punitive damages in an

> amount no less than $10,000,000, and his attorneys' fees and their disbursements.

(2d Am. Compl. ¶ 174; 2d Am. Compl., at 42.) Further, Plaintiff seeks, with respect to the '052 patent: a declaration that Defendants are in breach of the settlement agreement; a declaration that Plaintiff owns the '052 patent; damages; special damages, consisting of lost royalties for infringement of the '052 patent by others, attorney's fees and disbursements for investigating Defendants' acts and in settling the State Action and prosecuting this action; punitive damages (as outlined above); and interest, costs and expenses as determined by the Court.

Attached to Plaintiff's second amended complaint is correspondence with regard to settlement of the State Action, from which arose the Settlement Agreement at issue in this litigation. In the correspondence, Plaintiff's then-counsel proposed that defendant HDI disclaim all rights to Plaintiff's patent applications, including the one at issue here which became patent '052. (2d Am. Compl. Ex. 6, at 3.)[3] In response, counsel for defendant HDI responded:

> Heidelberg's minimal rights in this area under Dr. Rushing's employment contract with Kodak, include assignment of any inventions conceived by Dr. Rushing within two years after termination of his employment with Kodak, *i.e.*, through April 2001. For the application filed June 4, 2001, there is likely a significant question as to whether that invention was conceived within the post-employment "capture" period. Rather than contesting this issue, Heidelberg offers not to seek assignment of this invention in exchange for a license from Dr. Rushing reciprocal to the licenses offered to Dr. Rushing:

---

[3] The Court refers to the Portable Document Format (PDF) page number assigned by the Court electronic docketing system, since the individual pages of the exhibit are not Bates stamped, or otherwise numbered sufficiently to avoid confusion when referring to them. This reference is to page 2 of the letter from Plaintiff's then-counsel. The following reference is to the answering paragraph, in a letter that is not paginated at all, except for the PDF page numbering.

> irrevocable, non-exclusive, and limited to the Heidelberg/NexPress fields. Heidelberg further agrees not to pursue ownership of the application filed March 11, 2002.

(2d Am. Compl. Ex. 6, at 7.) At oral argument, Plaintiff's counsel asserted his position that, since the second amended complaint had all the pleadings and correspondence from the original State litigation, as well as the settlement agreement, it was clear that what the parties settled were all of the claims that NexPress had under the HDI agreement to Rushing's patents and patent applications. Defendant counters that all of this is about who owns the '052 patent and is subsumed in whatever Plaintiff must show to prove patent infringement.

In *Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 440 F. Supp. 2d 342 (2006), the district court had a similar situation before it. There, the plaintiffs sued alleging copyright infringement, and the defendants counterclaimed for breach of contract. The plaintiff moved to dismiss the counterclaim. The district court held that it did not follow that Bridgeport breached the contract by "bringing a good faith, if unsuccessful, copyright infringement action in support of its position." *Bridgeport*, 440 F. Supp. 2d at 345. The court further concluded that the breach of contract claim,

> derives from flawed logic. If accepted, this logic would allow any defendant sued for breach of contract to counterclaim against the plaintiff by asserting that the filing of the suit is in and of itself a breach of the contract. When parties have differing positions as to the meaning of a contractual term, it can not be deemed a breach for one party to sue to enforce its view of the contract.

*Id.* The same logic applies here.

Further, contrary to Plaintiff's argument on the motion, the Court is unpersuaded that this issue cannot be addressed on a motion to dismiss. Plaintiff's reliance on *Great*

*Lakes Press Corp. v. Froom*, 695 F. Supp. 1440 (W.D.N.Y. 1987), is misplaced. There, the central dispute what "whether Froom had a legal duty to assign the patents to Rendoll," and in that regard, the court said the issue "is governed by state law concerning the ownership of patents in the employment context. *E.F. Drew & Company, Inc. v. Reinhard*, 170 F.2d 679 (2d Cir.1948)." *Great Lakes Press Corp.*, 695 F. Supp. at 1445. Here, the central issue of the third claim is whether Plaintiff or Defendants own patent '052. In that regard, the district court in *E.F. Drew* held that, "there has developed a substantial body of 'federal common law' with regard to the question of ownership of patents in the employment context. This body of 'federal common law' has developed as the result of the fact that federal courts have exclusive jurisdiction over claims for patent infringement…." *Id*. Though the Court agrees that Defendants failed to use the term "preempt" in their responsive memorandum of law, the citation to *Bridgeport* provides a sufficient basis for the Court to determine that the Third claim is subsumed in the patent infringement claim. Accordingly, the Third claim in the second amended complaint is dismissed.

***Fourth Claim - Fraudulent Inducement***

With regard to their application to dismiss Plaintiff's fourth claim, alleging that they fraudulently induced him into signing a Settlement Agreement by purporting to represent that it established his ownership of patent '052, Defendants rely on *Telecom Int'l America, Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001), *Bridgestone/Firestone v. Recovery Credit Servs*., 98 F.3d 13, 20 (2d Cir. 1996), and *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 319-22 (1959). These cases establish that a litigant cannot recast a breach of contract case as a tort, and that,

> To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Bridgestone/Firestone*, 98 F.3d at 20 (citations omitted). Plaintiff has not done so here and the Court determines he has not plead a plausible fraudulent inducement claim.

***Fifth Claim - Breach of Fiduciary Duty***

Plaintiff claims that Defendants owed him a fiduciary duty by virtue of the circumstances alleged. (2d Am. Compl. ¶ 189.) The HDI Employment Agreement shows that Plaintiff was an "at will" employee. (Heldelberg Digital L.L.C. Employee's Agreement ¶ 7, attached to 2d Am. Compl. as Ex. 4.) A copy of the Kodak Employment Agreement is also attached to the second amended complaint, but is not clear enough to be read. In any event, Plaintiff has not alleged that he was not an "at will" employee and, with regard to that status, New York law is clear: "it is well settled in New York that no fiduciary obligation is owed by an employer to an at-will employee (*Murphy v American Home Prods. Corp.*, 58 NY2d 293)." *Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon*, 172 A.D.2d 254, 254 (N.Y.A.D. 1st Dept. 1991). Consequently, the Court determines that Plaintiff's breach of fiduciary duty claim is not plausible.

***Sixth Claim - Conversion***

Plaintiff claims that, "Defendants have converted for themselves intellectual property rights owned by Dr. Rushing." (2d Am. Compl. ¶ 194.) "It is elementary that the law of conversion is concerned with possession, not with title. (*McCoy v. American Express Co.*, 253 N. Y. 477, 482.)" *Pierpoint v. Hoyt*, 260 N.Y. 26, 29 (1932). Plaintiff contends that the

New York Court of Appeals has held that intangible property can now be the basis of a conversion claim. *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (2007). Analogizing that, "[a] document stored on a computer hard drive has the same value as a paper document kept in a file cabinet," *Id.*, at 292, the Court held,

> that the type of data that Nationwide allegedly took possession of--electronic records that were stored on a computer and were indistinguishable from printed documents--is subject to a claim of conversion in New York. Because this is the only type of intangible property at issue in this case, we do not consider whether any of the myriad other forms of virtual information should be protected by the tort.

*Id*. Contrary to Plaintiff's claims in the second amended complaint, however, this holding does not change the nature of the item converted. The only intangibles referred to by the Court of Appeals were stock certificates, which, under the merger rule, represented the stock itself and were, therefore, subject to a claim of conversion. Thus, had Plaintiff claimed that Defendants converted the patent document issued to him, *Thyroff* would support a claim of conversion. However, since his claim is that Defendants converted his patentable idea, not a tangible expression of that idea (either in electronic or paper form), the Sixth claim does not lie. Accordingly, it, too, must be dismissed.

***Seventh Claim - Slander of Title***

The New York State Supreme Court, Appellate Division, Third Department, discussed the elements of a slander of title claim in New York in a real property title dispute. That discussion is instructive in the following part:

> "The elements of slander of title are (1) a communication falsely casting doubt on the validity of complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages" (*Brown v Bethlehem Terrace Assoc.*, 136 AD2d 222, 224, 525 NYS2d 978 [1988]; *see Carnival Co. v Metro-Goldwyn-Mayer*, 23 AD2d 75, 77, 258 NYS2d 110 [1965]). Plaintiffs

> rely on defendant's recording of the 1994 quitclaim deed, certain letters to local newspapers and articles in its newsletter in which defendant and its president asserted ownership of the disputed property. We find no evidence of the malicious intent necessary to support a cause of action for slander of title and, given our conclusion that defendant had probable cause to claim title to the disputed property, these public assertions cannot be said to have been made "with a reckless disregard for their truth or falsity" (*Hirschhorn v Town of Harrison*, 210 AD2d 587, 588, 619 NYS2d 810 [1994]; *see Cosme v Town of Islip*, 63 NY2d 908, 909, 472 NE2d 1033, 483 NYS2d 205 [1984]).

*Fink v. Shawangunk Conservancy, Inc.*, 15 A.D.3d 754, 756 (N.Y. App. Div. 3d Dept 2005). Here, Plaintiff alleges that, "The defendants' public communications as to ownership of the '052 Patent falsely cast doubt on Dr. Rushing's ownership of the '052 Patent without justification." (2d Am. Compl. ¶ 198.) Defendants contend that,

> The sole public communication alleged is the ownership claim made in defendants' counterclaim in the present litigation. Defendants' counterclaim, however, is subject to an absolute privilege. "[A] statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation." *Sexter & Warmflash v. Margrabe*, 38 A.D.3d 163 (1st Dept. 2007); *see also Vevaina v. Paccione*, 125 A.D.2d 392 (2d Dept. 1986) (holding that statements alleged to be defamatory made in a complaint in a prior judicial proceeding that were pertinent to that litigation were privileged).

(Def.s' Mem. of Law, at 22.) Plaintiff counters that he has not, and need not, allege any evidence of public communications made by Defendants slandering his title to the patents and, further, that he did allege that Defendants, "took the actions described herein…to reduce competition by claiming ownership of, and patent rights to, inventions they did not own." (2d Am. Compl. ¶ 56.) The Court disagrees with Plaintiff's argument. The Supreme Court has stated that,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief

> above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp.*, 550 at __, 127 S. Ct at 1964-65 (citations and internal quotations omitted). Here, Plaintiff has failed to do more than plead conclusory allegations that Defendants publically and maliciously communicated ownership of the patent by counterclaiming against Plaintiff's complaint. Thus, the Seventh claim must be dismissed.

***Eighth Claim - Abuse of Process***

Plaintiff's eighth claim against Defendants is that they "made claims against Dr. Rushing in the Federal Action and make claims in this action pertaining to 'Trek' and make claims in this action concerning ownership of the '052 Patent without excuse or justification and with the purpose of obtaining collateral objectives outside the legitimate ends of the process." (2d Am. Compl. ¶ 203.) "Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984) (citation omitted). In *Curiano*, the New York Court of Appeals upheld the dismissal of a claim of abuse of process. In analyzing the allegations with respect to the elements, the Court wrote:

> First, the process used must involve "an unlawful interference with one's person or property" (*Williams v Williams*, 23 NY2d 592, 596). Insofar as the only process issued in the *Suozzi v Parente* action was a summons, the process necessary to obtain jurisdiction and begin the lawsuit, there was no unlawful interference with plaintiffs' persons or property because the institution of a civil action by summons and complaint is not legally considered process capable of being abused (*Hoppenstein v Zemek*, 62 AD2d 979, 980; *see Drago v Buonagurio*, 61 AD2d 282, 285, *revd on other grounds* 46 NY2d 778; *Osinoff v Muchnick*, 53 AD2d 858, 859). Moreover, plaintiffs have not alleged the "'gist of the action for abuse of process'", which is "'the improper use of process after it is issued'" (*Williams v Williams*, supra,

> at p 596; *Dean v Kochendorfer*, 237 NY 384, 390; *Miller v Stern*, 262 App Div 5, 8). They do not contend that the summons issued by defendants was improperly used after it was issued but only that defendants acted maliciously in bringing the action. A malicious motive alone, however, does not give rise to a cause of action for abuse of process (*Hauser v Bartow*, 273 NY 370, 374).

*Curiano*, 63 N.Y.2d at 116-17. The allegations in paragraph 203 of the second amended complaint recite, as the basis for this cause of action, that the claims Defendants are making in this litigation are "without excuse or justification." Plaintiff's allegations fail to allege that Defendants used a process "in a perverted manner to obtain a collateral objective," and, consequently, Plaintiff's Eighth claim must be dismissed.

## CONCLUSION

Defendants' motion (Docket No. 71) to dismiss portions of the second amended complaint (Docket No. 69) is granted and it is hereby

ORDERED, that Plaintiff's Third Claim, alleging a breach of the settlement agreement with respect to patent '052, is dismissed; and it is further

ORDERED, that claims Four through Eight in Plaintiff's second amended complaint, are dismissed.

IT IS SO ORDERED.

Dated: January 13, 2009
Rochester, New York

ENTER.

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Court